## NICHOLS v. HUFFORD.
### (No. 714.)

Water and Water Rights—Irrigation—Appropriation—Priority— Water Right Statements—Purpose and Effect—Date of Appropriation—Adjudication of Priorotties—Amount Allowed for Irrigation—Evidence—Record as to Certain Matters in State Engineer's Office—Appeal and Error—Record Evidence—Witnesses—Opinions.

1. The statute with reference to water rights enacted by the Territorial legislature in 1886 (Laws 1886, Ch. 61, Rev. Stat. 1887, Sec. 1331 et seq.), providing for the filing of statements by ditch owners or claimants, was enacted for the purpose of establishing a record of the claims of water users to protect them in their rights, assist in adjudicating the various priorities through the procedure provided by the act, and in the regulation by the proper officials for the use of the water.   Such statements were intended merely to set forth, under oath, the claim of the party filing the same, and did not amount to a permit to appropriate the specific amount of water claimed regardless of the necessity therefor, nor was the recital in such a statement of a definite amount of water claimed controlling as to the amount of water to be adjudicated in favor of the party filing it.

2. Although it was provided in Section 13 of said act as to statements thereafter filed by a party intending to construct a ditch and to use or appropriate water for beneficial purposes that from the time of filing any such statement water sufficient to fill such ditch or ditches, and to sub-

serve a lawful or just use, shall be deemed and adjudged to be appropriated, if the actual construction of the ditch or ditches shall begin within sixty days after filing the statement and be prosecuted diligently and continuously to completion, the effect of the section, taken in connection with the rest of the act, was merely to provide or declare that when the work of constructing the ditch was commenced within the time specified and pursued diligently and continuously to completion, the date of filing the statement should be considered as the date of the appropriation.

3. No warrant is to be found in the section aforesaid, nor in any other statute, for permitting or recognizing an appropriation of water not applied to a beneficial use, or intended to be so applied, or a greater quantity of water than is reasonably required for such purpose.

4. Without deciding whether the provision of the statute enacted by the first State legislature (Laws 1890-91, Ch. 8, Sec. 25, Comp. Stat. 1910, Sec. 777), declaring that no allotment of water for irrigation shall be made by the board of control in adjudicating priorities exceeding one cubic foot per second for each seventy acres of land, is or is not a valid regulation as to appropriations made prior to its adoption, the board and the courts may properly so limit the right of any appropriator when it is found to be sufficient and adequate for the purpose of the appropriation.

5. Aside from the general information possessed by the board of control concerning the requirements of various classes of land in the state, the court may assume that some such information as to land in controversy involved in an adjudication proceeding was of record in the office of the state engineer, the contest before the court having been instituted and heard in the course of a proceeding for adjudication of priorities, and it being the duty of the engineer or his assistant to make an examination of the stream, the works diverting water therefrom, the carrying capacity of the various ditches, an examination of the irrigated lands, and an approximate measurement of the lands irrigated or susceptible of irrigation from the various ditches, and to make a record in his office of such observation and measurements.

6. The statute requiring that on an appeal from an order of the board of control adjudicating priorities to the right to the use of water for irrigation or other beneficial purposes

shall file in the office of the clerk of the District Court to which the appeal is taken a certified transcript of the order appealed from, the records of the board relating to the determination, and the evidence offered before the board, including the measurements of streams, appropriations and ditches made by or under the supervision of the engineer as required by law, the court should hesitate to disturb the board's findings and determination, where the record of the board as to the measurements and examination so provided for by law has not been brought before the court by certified transcript or otherwise.

7. Whatever may be the effect of the statutory limitation upon the allotment of water for irrigation upon appropriations made prior to the enactment of the statute, the use may be limited in accordance with the statute where there is no evidence, or the evidence is insufficient, to establish the duty of water upon the lands in controversy.

8. The statutory provision limiting an allotment of water for irrigation to one cubic foot per second for each seventy acres of land for which an appropriation may be or has been made having remained unchanged for more than twenty years, it may be assumed that the maximum use thereby prescribed has been found at least generally to be sufficient, and, in the absence of other satisfactory evidence, the statute respecting the amount to be allotted should be followed.

9. It having been stated in the findings of the board adjudicating the priorities to the use of water upon a certain stream and its tributaries that the measurements of the duty of water in the state indicate that the maximum use prescribed by the statute is sufficient under the most extreme conditions, *held,* that whether said statutory limit as to maximum use is conclusive or controlling in any case or not, it is at least to be regarded as furnishing a standard, in the absence of competent or satisfactory evidence that the use thereby permitted is insufficient in a particular case, and the evidence to that effect should be reasonably clear and satisfactory to entitle an appropriator to an allotment exceeding the statutory limit.

10. A showing that all the water of the stream had at times been used or allowed to flow upon the land of a party does not necessarily prove an appropriation of all of it for a beneficial use, for an appropriation must be limited to the amount reasonably required for a proper and successful

cultivation of the land, or ,other use to which the land is applied.

11. Upon the question of the quantity of water necessary to irrigate a particular tract of land and whether the amount of water allotted by statute per acre for irrigation purposes is sufficient for the irrigation of said tract the testimony of witnesses who were practical irrigators, but whose testimony was confined to expressions of opinion based upon the general gravelly character of the soil, causing it to absorb more water than in the case of other kinds of soil, without showing any tests or measurements, or particular examination of the soil, or a knowledge of the quantity of water embraced in a flow of one cubic foot per second, and very little, if any, acquaintance with the method employed in irrigating the particular land, except that ditches and laterals were used, *held*, to be unsatisfactory and not entitled to much weight in determining the duty of water as applied to land in controversy; the opinions of the witnesses, though honest, seeming to be little more than conjecture or guesswork.

12. The record made by the examination and measurements of the state engineer provided for by law (Comp. Stat. 1910, Sec. 776), cannot affect the question as to the time or times when uncultivated lands may have been irrigated and the extent of the appropriation therefor in respect to the period of use.

13. On appeal from the state board of control adjudicating priorities of water rights, *held*, upon the evidence, that the order of the board improperly restricted the use of water found to have been appropriated by a party for uncultivated lands by denying his right to use such water during the season when irrigation is more particularly required for cultivated crops; but, it not appearing that those lands had been irrigated when said party's cultivated lands were being irrigated, he was not entitled to use at the same time the water appropriated for his cultivated and uncultivated lands, though when not engaged in irrigating his cultivated lands, even during the irrigation season, he should be permitted to use the amount found to have been appropriated for the uncultivated or pasture lands.

[Decided June 30, 1913.]                    (133 Pac. 1084.)

ERROR to the District Court, Uinta County, HON. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*H. E. & H. R. Christmas,* for plaintiff in error.

The contestant, Hufford, failed to establish a right to the use of any of the water of the stream or any of the allegations contained in his contest affidavit. The testimony of the witnesses, all claiming to be experienced irrigators and ranchmen, established the fact that all the water of the stream at all times was used in irrigating the lands of the contestee, the plaintiff in error, thereby leaving no water to be appropriated by the contestant. Appropriators of water for irrigation purposes are allowed a reasonable time, after conducting water to the point of intended use, to apply it to the use intended. They may add to the acreage of cultivated land from year to year, and make application of water thereto for irrigation as their interests demand, or as their abilities may permit, until the entire amount of water at first diverted has been put by them to a beneficial use, provided that amount is required for the usual irrigation of the land. (Conant v. Jones (Ida.) 32 Pac. 250.) The first appropriator is entitled to use and enjoy the water to the full extent of his original appropriation, even though that includes all of the water of the stream. (Barnes v. Sabron, 10 Neb. 217; Nevada W. Co. v. Powell, 34 Cal. 109; Gale v. Toulumne W. Co., 14 Cal. 25; Hines v. Johnson, 61 Cal. 259; Hillman v. Hardwick, 2 Ida. 983; Huning v. Porter, 54 Pac. 584; Kirk v. Bartholomew, (Ida.) 29 Pac. 40; Geertson v. Barrack, 29 Pac. 42; Strickler v. Colo. Springs, 26 Pac. 313; Jennison v. Kirk, 98 U. S. 461; Roberts v. Arthur, 15 Colo. 456.) No public interest enters into this controversy, and therefore the declaration of the Constitution applies, that priority of appropriation for beneficial use shall give the better right. The statute limiting the quantity of water to be allotted an appropriator for irrigation purposes cannot apply to the appropriation of the plaintiff in error for the reason that his rights are to be controlled by the earlier statutes in force when his appropriation was made. It cannot be successfully contended that the predecessors of plaintiff in error could not assign or sell his rights

to them, for the question has been decided in favor of such right of assignment. (Strickler v. Colo. Springs, *supra*.) Not only the actual prior appropriations of water, but the quantity of land and character of the soil are to be considered in determining the controversy as to water rights. (Kinney on Irr., p. 386.)

The board of control improperly restricted the use by plaintiff in error of some of the waters appropriated by him to a certain period in the year, excluding the summer season, and improperly limited his right to use water to the maximum amount of one cubic foot for each 70 acres, thereby depriving him of a vested property right.

*B. M. Ausherman,* for defendant in error.

There is no conflict in the evidence as to the quantity of water ordinarily in the stream. It is exceptional in this respect that its normal flow seems to be constant or continuous. The fact that all of the water in the stream may have been turned upon the land of the plaintiff in error does not establish compliance with statutory regulations, or with the principle of law that an appropriation of water shall be actual and beneficial use. (Farm Inv. Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258; Johnston v. Little Horse Creek Irrigation Co., 13 Wyo. 208, 79 Pac. 22.)

The mere filing of a statement of claim to a water right under the statutes of the Territory did not constitute an appropriation of water. Neither the board nor the court can make an allotment of water for irrigation beyond the amount authorized to be allotted for that purpose by the statute. (Comp. Stat. 1910, Sec. 777.) It is clear by the testimony that little attention was paid by the plaintiff in error to the proper distribution of water upon his lands to irrigate them economically, but he allowed considerable water from time to time to be wasted.

POTTER, JUSTICE.

This is a proceeding in error for the review of a judgment of the District Court sitting within and for the County of Uinta, disposing of a contest on appeal from the State

Board of Control, involving the right of the plaintiff in error, Harry Nichols, to the use of the waters of Pine Creek, a tributary of Smith's Fork, a tributary of Bear River. The Board of Control having taken up the matter of the adjudication of the priorities of rights by appropriation to the use of the water of Bear River and its tributaries, and Harry Nichols having produced evidence before the Division Superintendent in support of his claim to all of the water in Pine Creek, Vaughn Hufford, who had been granted a permit to appropriate water from said stream, instituted a proceeding contesting the right of said Nichols to the amount of water claimed by him. That the right of Nichols to so much of the water as had been appropriated by him for irrigation was prior in point of time and superior to that which would be acquired by the contestant under his permit was not disputed, but the grounds of the contest were that Nichols was claiming to have irrigated much more land than had in fact been irrigated, and a greater quantity of water for that purpose than had in fact been beneficially used and appropriated. The evidence taken in the contest by the water division superintendent was transmitted to the Board of Control, and upon a hearing by the Board upon that evidence, which was conflicting as to the number of acres irrigated, and upon "the records of the office of the State Engineer," the Board allowed the contestee an appropriation for practically the entire acreage of land shown by his testimony to have been irrigated, viz.: 459 acres of cultivated land, and 296 acres of uncultivated land covered with a growth of sage brush, which had been irrigated at times when the water was not needed for the cultivated land, to increase the growth of the natural grasses for pasture purposes, but limited him as to all of the land to an appropriation of one cubic foot per second for each 70 acres, and to the use of water upon the uncultivated land during the period between September 15 and June 15, denying the right to use the water on that land during part of the irrigation season for cultivated crops, viz.: between June 15

and September 15. The Board stated in its findings, explaining the amount allowed for the cultivated land, as follows:

"That no reliable or accurate measurements have been made of the discharge of Pine Creek, that from the evidence it would seem that the normal flow of the stream during the late irrigation season does not exceed from six to eight cubic feet of water per second of time; that if the contestee estimates that his lands require more than one cubic foot of water per second for each seventy acres of land, this conception is due to an overestimate of the volume of water flowing in Pine Creek rather than because of the excessive demands of his lands and crops; that all of the measurements of the duty of water in Wyoming indicate that the maximum use, under conditions similar to those along Pine Creek, would require a total depth of water of 2.50 feet on the land irrigated during the irrigation season; that the average use requires a total depth of approximately 1.50; that the volume put on the lands at the rate of one cubic foot per second for each seventy acres would cover the land to a depth of 3.43 for an irrigation season of 120 days, which would be sufficient under the most extreme conditions; that the law and the practice of the Board of Control only fixes the maximum limit and the actual use is regulated thereunder by the water commissioner in accordance with actual needs; that there is no evidence in this case which would establish the duty of water for the lands along Pine Creek and all information available would show that the statutory limit would furnish a volume in excess of the actual needs of such lands."

With reference to the irrigation of the uncultivated land, it was said in the findings of the board: "The Goodell ditch (one of the ditches of contestee) follows a ridge enabling it to serve 287 acres of land because of the favorable southern slope, and quality, thus enabling cultivation to take place, and cultivated crops to be raised, and that other lands have, in a measure, been irrigated on the northern slope of

said ridge. The testimony shows that lands on the said northern slope of the ridge, and which lie in a general northerly direction from the cultivated area, have been irrigated from time to time, after the cultivated crops have been served, for the purpose of increasing the growth of natural grasses. This area of land, still remaining uncultivated and covered with a growth of sage brush, has a total area of 296 acres. Such lands are reclaimed through the said Goodell Ditch with a priority relating back to the year 1887, but the record discloses that they have been irrigated at times when the cultivated crops do not need irrigation."

It was specified in the order or decree of the board that the contestee was found and adjudged entitled to water from Pine Creek as follows: By and through the Collett Ditch 2.47 cubic feet per second, for 172 acres, the same being particularly described, with a priority relating back to the year 1881. By and through the Goodell Ditch, 4.10 cubic feet per second, for 287 acres, particularly described, with a priority of appropriation dating back to 1887. By and through the said Goodell Ditch, with the same date of priority, 4.23 cubic feet per second of time, permitting the irrigation of 296 acres of uncultivated land. "These lands to have no right to irrigation between May 1st and September 15th of each year." This limitation as to the 296 acres is found in the tabulated statement contained in the order. But in a separate paragraph it was specifically ordered and adjudged that the use of water from the Goodell Ditch for said uncultivated land be confined to the period between the 15th day of September of each year and the 15th day of June of the following year, and that such lands be denied the right of irrigation during that period of each year commencing with June 15th and ending with September 15th. It was also ordered that the proof submitted by said Nichols for the "Nichols Ditch" or "Pine Creek Falls Ditch" be rejected; and that all the appropriations of water thereby determined shall be limited to the needs of the land, and not to exceed in amount "one cubic foot of water per

second for each 70 acres of land irrigated." The "Nichols" or "Pine Creek Falls Ditch," it appears, was intended by Nichols to carry water in the spring and fall to a certain tract referred to as a desert entry, but it was clearly shown by the testimony that said tract had not been irrigated; and it does not seem to be here contended that any error was committed in the denial of an appropriation for any land under that ditch. It was found by the Board that the permit held by the contestant, Hufford, had not expired, and that he had further time to complete his irrigation works and apply the water to a beneficial use.

The cause was heard in the District Court upon the evidence taken before the Division Superintendent, and without anything that appeared among the records in the office of the State Engineer not included in the evidence so taken. Upon consideration thereof the District Court, in its judgment order, approved and confirmed the findings and order of the Board of Control, "save and except its finding as to the measurement or normal flow of water in Pine Creek which the evidence and record in the case show to be sixteen to eighteen cubic feet of water per second of time instead of six to eight cubic feet as designated in said finding and order." And with that exception, the findings and order of the board were adopted, approved, confirmed and made the findings and order of the court. The evidence clearly showing that the normal flow of the stream is 16 to 18 feet per second, it is probable that the statement in the board's order that the same was 6 to 8 feet was the result of a clerical error. The court, therefore, modified the order in that respect, and in every other particular allowed it to stand as the order and judgment of the court. The appeal to the District Court was taken by the contestee, and he brings this proceeding in error.

It is not contended that the plaintiff in error was allowed an appropriation and priority for less land than he was entitled to, but that such appropriation for the cultivated lands was improperly limited as to amount, and for the un-

cultivated lands improperly limited as to the time when the water may be used. It is argued that his right to the water having been acquired when Wyoming was a Territory, and under Territorial laws, prior to the enactment of the statute fixing in effect the maximum of use at one cubic foot per second for each 70 acres, and all of the water of the stream having been used by him at times in the irrigation of his land, he thereby became entitled to all of such water at all times. Counsel is in error in supposing that under the territorial laws one who filed a statement claiming a water right thereby obtained a permit to appropriate the specific amount of water claimed in such statement, whether the same would or would not be required for the intended purpose, or that by reciting in such statement the quantity of water claimed to be appropriated or intended to be appropriated, his right to such quantity was conclusively established. The Act of 1886, which provided for the filing of statements by ditch owners or claimants, was enacted for the purpose of making a record of the claims of water users, to protect them in their rights, assist in the adjudication of the various priorities through the procedure established by the act, and in the regulation by public officials of the proper use of the water. Such statements were intended merely to set forth the claim of the party under oath, and, respecting the amount of water appropriated or intended to be appropriated, the act required only that there should be stated "the amount of water claimed by or under" the construction, enlargement or extension of the ditch. (Laws of 1886, Ch. 61, Sec. 10; Revised Statutes 1887, Sec. 1340.) It is true that in Section 13 of the Act (Rev. Stat. 1887, Sec. 1343) it was provided as to statements thereafter filed by a person intending to construct a ditch and to use or appropriate water for beneficial purposes, that "from the time of filing any such statement water sufficient to fill such ditch or ditches, and to subserve the use or uses aforesaid, if a lawful or just use, shall be deemed and adjudged to be appropriated; * * * Provided, * · * * that such person

* * * shall within sixty days next ensuing the filing of such statement, begin the actual construction of said ditch or ditches, and shall prosecute the work of the construction thereof diligently and continuously to its completion." The effect of that section, taken in connection with the rest of the act, was merely to provide that when the work was commenced within the time specified and pursued diligently and continuously to completion, water sufficient, within the capacity of the ditch, to subserve the intended lawful and just use, would be deemed and adjudged appropriated from the time of filing the statement. In other words the date of filing the statement in such case was declared to be the date of the appropriation. No warrant can be found in that section, or in any other statute, for permitting or recognizing an appropriation of water not applied to a beneficial use, or intended to be so applied, or a greater quantity of water than is reasonably required for such purpose. Indeed it was provided in the same act that the water commissioners shall so divide, regulate and control the use of the water of all streams within their respective districts, in such manner as will prevent unnecessary waste, and to that end that such commissioners shall so regulate the headgate or gates of all ditches that no more water will flow therein than is actually required and will be used for the purpose for which the water was appropriated. (Laws 1886, Ch. 61, Sec. 29; Rev. Stat, 1887, Sec. 1359.) The recital of a definite amount of water claimed would not, therefore, be controlling as to the amount to be adjudicated in favor of the party filing the statement.

It is no doubt true that when the appropriators were few, and there was ample water for all, the law was not construed very strictly with reference to the amount of water appropriated, either by irrigators in using the water, or the courts in adjudicating priorities, more attention being paid to the capacity of ditches than the quantity of water actually required. And it was customary, in compliance with the statute of 1886 as to the filing of statements, to claim in

such statement an amount for irrigation purposes equal to the capacity of the ditch, although that might exceed the quantity that could be economically or properly applied and used. But with the increase of the acreage under irrigation and the number of appropriators, requiring economy in the distribution and use of water to make it serve as much land as possible, there has been a gradual and persistent tendency to restrict the appropriation and use to an amount reasonably necessary when properly applied. Hence the enactment of our statute in 1890 by the first State Legislature, as the result, we suppose, of experience and measurements, declaring that no allotment of water for irrigation shall be made by the Board of Control, in adjudicating the various priorities, exceeding one cubic foot per second for each 70 acres of land. Whether that provision is or is not a valid regulation as to appropriations made prior to its adoption it is unnecessary in this case to decide. Without such provision in the statute, it is clear that the Board and the courts may properly so limit the right of any appropriator when it is found to be sufficient and adequate for the purpose. In this case the Board so found, stating in its order the general result of the measurements of the duty of water in this state, and that there was no evidence in the case establishing such duty for lands along Pine Creek, but that all available information shows that the statutory limit would furnish a volume in excess of the needs of such lands.

Aside from the general information possessed by the board concerning the requirements of various classes or kinds of land in the state, we may assume that some such information as to these lands was on record in the office of the state engineer, for this contest was instituted and heard in the course of a proceeding for the adjudication of the various priorities to the use of water from Bear River and its tributaries, and it was and is made the duty of the state engineer, or some qualified assistant, in such cases, to make an examination of the stream, the works diverting water therefrom, the carrying capacity of the various ditches and

canals, an examination of the irrigated lands, and an approximate measurement of the lands irrigated, or susceptible of irrigation, from the various ditches and canals, "which said observation and measurements shall be reduced to writing, and made a matter of record in his office." . (Comp.. Stat. 1910, Sec. 776.) That section also requires that the state engineer shall make, or cause to be made, a map or plat on a scale of not less than one inch to the mile, showing with substantial accuracy, the course of said stream, the location of each ditch or canal diverting water therefrom, and the legal sub-divisions of land which have been irrigated, or which are susceptible of irrigation from the ditches or canals already constructed. It is made the duty of a party appealing from a determination of the board, within six months after the appeal is perfected, to file in the office of the clerk of the District Court a certified transcript of the order appealed from, the records of the board relating to such determination, and the evidence offered before the board, including the measurements of streams, tributaries and ditches provided for by Section 776. (Comp. Stat., 1910, Sec. 782.) The certified transcript of the order, and the evidence which was taken before the division superintendent, was so filed in this case, but the record made of the measurements and examination provided for in Section 776 do not appear in the record here by any certified transcript or otherwise. On that ground it appears that a motion was made in the District Court by the contestant, Hufford, to dismiss the appeal. That motion was denied and the contestee, the appellant, was given additional time within which to secure from the board and file in the office of the clerk such additional papers as are necessary to make complete the certified copy of all the records of the board relating to the determination. Counsel for defendant in error, in his brief, insists that by the failure of the plaintiff in error to file such additional papers the entire record upon which the matter was determined by the board is not here and was not before the District Court. So far as any such

additional papers or record might affect the controversy, we should at least hesitate, in their absence, to disturb the board's findings and determination. And we think it possible, if not indeed probable, that the board may have had before it the record provided for in Section 776, showing an examination of the irrigated lands of the plaintiff in error, and the result thereof respecting their quality and character, enabling the board to arrive at a reasonable conclusion in the absence of other satisfactory evidence upon the subject as to the amount of water which would be sufficient for their proper and successful irrigation.

Again, if it should be conceded that the statutory limitation upon the use of water for irrigation would not necessarily control the allotment for an appropriation made or initiated prior to the enactment of the statute, we perceive no impropriety or injustice in limiting the use in accordance with the statute, where there is no evidence, or it is insufficient, to establish the duty of water upon the lands. The statutory provision has remained unchanged for more than twenty years, and we may suppose that the maximum use thereby prescribed has been found at least generally to be sufficient. Indeed in the absence of other satisfactory evidence there would seem to be no other course open than to follow the statute respecting the amount to be allotted. There was an attempt to show by the opinions of men having some acquaintance in a general way with the lands and were practical irrigators, that the lands of plaintiff in error required more water than one cubic foot per second for each 70 acres, and some witnesses produced by the contestee testified that all of the water normally flowing in the stream would be required to irrigate the 800 acres. But, aside from the statement that one cubic foot per second was insufficient, the amount that would be sufficient for the cultivated land was not stated, either exactly or approximately, and it appeared that the irrigation of the uncultivated land had occurred only when irrigation of the cultivated tracts was finished or unnecessary. It was shown clearly enough that at

times all of the water in the stream was turned into the ditches of plaintiff in error and allowed to run upon his lands, though we think that appears to have been done without any great care to ascertain whether all of it was necessary at the time; and there is evidence to the effect that the attempt to use so much water resulted in waste, and to the detriment of the land. Mr. Hufford, the contestant, who testified that he was an engineer and had made a close study of irrigation for many years, and considered himself competent to determine when land is properly irrigated, and when it is not, and to judge the amount of water that different kinds of soil required, testified that at different times during the irrigating season he had examined and made a test of the soils from different locations upon the Nichols ranch, and that in his opinion too much water had been used upon the crops, the same standing in pools in some places, and that the soil is of such character that the legal allowance, or less than that, is sufficient to properly irrigate all of the land; that the soil generally is of a very good quality, gravelly loam, containing a light per cent of gravel, and has what is called a gravelly cement subsoil, which water will not penetrate. He further testified that he knew that Mr. Nichols had turned in his ditches and upon his lands more than the statutory allowance, but also knew that in doing so he had turned more water upon the ground than could be sufficiently or beneficially used, and that the amount of water so attempted to be used was detrimental to the crops and the lands.

The showing that all of the water of the stream had been at times used or allowed to flow upon the land does not necessarily prove an appropriation of all of it for a beneficial use, for the appropriation must be limited to the amount reasonably required for the proper and successful cultivation of the land, or other use to which the water is applied. (Little Walla Irr. Union v. Finis Irr. Co., (Or.) 124 Pac. 666; 2 Kinney on Irr., 2nd Ed., Sec. 885.) Beyond that it was attempted to show, as above stated, by the

testimony of practical irrigators, that the amount of water allowed by statute to be allotted for irrigation purposes was insufficient for the irrigation of these lands. That testimony was confined to expressions of opinion, without showing any tests or measurements, or particular examination of the soil, but the opinions were based upon the general gravelly character of the soil, which would cause it to absorb more water than in the case of other kinds of soil, thereby requiring a greater amount of water for successful irrigation and cultivation. None of the witnesses appeared to know the quantity of water that would be embraced in a flow of "one cubic foot per second," and some of them had no acquaintance or very little with the method employed in irrigating these lands, except that ditches and laterals were used. One witness never saw the land irrigated. Another seemed to resent by disrespectful and even insolent answers the attempt by counsel on cross-examination to ascertain the extent of his knowledge of irrigation and his competency to testify concerning the needs of these lands, although the questions were courteous in form and appear to have been properly propounded for the purpose indicated. We are impressed, as the board must have been, with the unsatisfactory character of this testimony. The witnesses were no doubt honest in respectively stating their opinions, but such opinions seem to be little more than conjecture or guesswork, based solely upon the gravelly condition of the soil and the fact that they had seen all the water of the creek turned into the ditches or on the land. It is not the kind of testimony usually deemed necessary for the purpose of establishing the duty of water as applied to irrigation. As the result of the decisions it is stated in Wiel on Water Rights that in determining the duty of water in any particular case, evidence should be from actual experiment and measurement if possible; and that opinion evidence is of less value than experiment. (3rd Ed., Vol. 1, Sec. 487.) And in Kinney on Irrigation (Vol. 2, Sec. 916) it is said that the court should hear the evidence of persons who are

competent to testify upon the subject, and who can do so, not from guesswork or hearsay, but from actual measurements and tests and the actual application of the water to the lands irrigated. Further, in Section 888, it is said that the courts hold "in order for a witness to be competent to testify as to the measurement and duty of water, he must have had experience and training along these lines."

In the case of Farmers Co-operative D. Co. v. Riverside Irrigation District, 16 Idaho, 525, 102 Pac. 481, the remarks in a former case were quoted as follows: "The law only allows the appropriator the amount actually necessary for the useful or beneficial purpose to which he applies it. The inquiry was therefore not what he had used, but how much was actually necessary," following which the court announced this principle: "In determining the duty of water, reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation. Water users should not be allowed an excessive quantity of water to compensate and counter-balance their neglect or indolence in the preparation of their lands for their successful and economical application of the water." And, further, that for the purpose of determining the question as to the duty of water for irrigation, "the court can hear evidence of persons who are competent to testify on the subject, and who can do so, not from guesswork or hearsay, but from actual measurements and tests and applications of the water to the lands irrigated." In Longmire v. Smith, 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308, the court said that "the Superior Court found that it could not determine from the evidence the quantity of water required for the irrigation of plaintiff's parcels of land. The evidence upon this issue is not sufficiently clear to set aside this finding. An examination discloses that a number of witnesses, when testifying, and while expressing opinions as to the number of inches of water required to irrigate the land, had not very definite ideas of the measurement of water; and the court was justified in attaching but little

weight to such testimony." (See also Whitted v. Cavin, 55 Or. 98, 105 Pac. 396.) The board evidently adopted the view that the opinions of these witnesses were not entitled to much weight in determining the duty of water as applied to the lands in controversy, and the District Court no doubt took the same view. Without more minutely rehearsing this testimony we think it sufficient to say that it fails to satisfy us that the board and court erred in that particular.

It is stated in the findings of the board that all the measurements of the duty of water in this state indicate that the maximum use prescribed by the statute is sufficient under the most extreme conditions, thus showing the reasonableness of the statutory provision generally, at least. Whether it is conclusive or controlling in any case or not, we think it may at least be properly regarded as furnishing a standard in the absence of competent or satisfactory evidence that the use thereby permitted is insufficient in a particular case; and that the evidence to that effect should be reasonably clear and satisfactory to entitle an appropriator to an allotment exceeding the statutory limit.

That part of the findings and order confining the plaintiff in error to a certain period of the year for the use of the water upon his 296 acres of uncultivated land is complained of. As stated in the findings these lands appear to have been irrigated "after the cultivated crops have been served, for the purpose of increasing the growth of natural grasses"; and that "the record discloses that they have been irrigated at times when the cultivated crops do not need irrigation." The order limits the use of the water found to have been appropriated for such lands to the period between the 15th day of September of each year and the 15th day of June of the following year, the purpose evidently being to deny the right to use such water during the season when irrigation is more particularly required for the cultivated crops. While the testimony is not very clear as to whether it had been the custom of the plaintiff in error to irrigate the uncultivated land during the usual so-called irriga-

tion season, we think the evidence may reasonably be construed as showing that this irrigation may have occurred at times during such irrigation season, but when water was not being used upon the cultivated land. The plaintiff in error testified in that respect as follows: "Q. How then do you irrigate your pasture land? A. When we are not using the water on the alfalfa then we turn it out on the pasture. Q. Then do you have men there to distribute it? A. We change it as we need it from one place to another. Q. Do you keep two men employed that way? A. Not all the time. We change it as necessary." There is a discrepancy between the tabulated statement of the priorities contained in the findings and order, and the provisions of the order following such statement, as to the period to which the use of the water for the uncultivated land is limited. At the foot of the tabulated statement it is stated that said lands shall have no right to irrigation between May 1st and September 15th of each year. In the order, following the statement, it is declared that the right of irrigation for such lands is denied during the period each year commencing June 15 and terminating September 15. The words contained in the latter provision of the order we think show what was finally intended by the board, because they are more specific, stating not only the period during which the water may not be used, but also the period during which it may be used; and the restricted period for using the water under that order should be understood and held to be from September 15 to the 15th day of June following, thus denying the right of use only during the period from June 15 in each year to September 15, and, so far as we shall affirm the order, it will be affirmed with that modification. We do not believe that the record made by the examination and measurements of the State Engineer provided for in Section 776 of the Compiled Statutes could affect the question as to the time or times when the uncultivated land may have been irrigated, and the extent of the appropriation therefor in respect of the period of use. It seems to us that upon the

evidence in the case the order of the board improperly re-
stricts the use of the water found to have been appropriated
for the uncultivated lands. Since it does not appear that
those lands were irrigated or that the water was used there-
for when the cultivated lands were being irrigated, we do
not think the plaintiff in error is entitled to the right to use
at the same time the water appropriated for the uncultivated
lands and also that appropriated for the cultivated lands.
But when not engaged in irrigating the cultivated lands, even
during the irrigation season, we see no impropriety in per-
mitting him to use the 4.23 cubic feet per second found to
have been appropriated for said uncultivated or pasture
lands. This would not permit the plaintiff in error to turn
his aggregate appropriation for all the lands into his ditches
at the same time, but when engaged in the irrigation of his
459 acres of cultivated lands he would only be permitted
the use of the amount of the allotted appropriation for those
lands; and when engaged at any time between June 15 and
September 15 in irrigating 296 acres of uncultivated or
pasture land, or any part thereof, he would only be per-
mitted to turn into his ditch or ditches and use the amount
of his appropriation for those lands, viz.: 4.23 cubic feet
per second of time. We believe that this matter can be
properly regulated by the water officials, to the end that no
subsequent appropriator will be thereby injured. The order
will, therefore, be further modified by adding to the para-
graph declaring the restriction upon the use of the water for
the 296 acres of unculitvated lands the following: "Pro-
vided that during the period commencing with said 15th
day of June and terminating with said 15th day of Sep-
tember, in each year, whenever the said Harry Nichols, or
his successors in the ownership of said lands, are not using,
taking or diverting water from Pine Creek for the purpose
of irrigating any of the cultivated lands described in the
findings and tabulated statement, for which he is allowed an
appropriation of 2.46, and 4.10 cubic feet per second of
time respectively, the water allowed for said uncultivated

lands may be used to irrigate the same; and whenever during that period the water shall be used for said 296 acres of land, or any part thereof, none of the water found to have been appropriated for the above described cultivated tracts shall be used, taken or diverted from said stream."

In all respects, except as modified by the District Court and by this court as above stated, the judgment will be affirmed.

Scott, C. J., and Beard, J., concur.