William E. **BARBER** and Edna **Barber, Husband and Wife,** **Appellants (Plaintiffs),**

v.

The **CITY OF DOUGLAS, Wyoming, a** **Wyoming Municipal Corporation,** **Appellee (Defendant).**

The **CITY OF DOUGLAS, Wyoming, a** **Wyoming Municipal Corporation,** **Appellant (Defendant),**

v.

William E. **BARBER** and Edna **Barber, Husband and Wife,** **Appellees (Plaintiffs).**

Nos. 96–43, 96–42.

Supreme Court of Wyoming.

Jan. 30, 1997.

William W. Harden, Casper, for William E. Barber and Edna Barber.

Thomas E. Campbell, of Hand & Campbell, P.C., Douglas, for City of Douglas.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

THOMAS, Justice.

At issue in this case is a district court ruling that there was no justiciable controversy presented in a declaratory judgment sought by William E. Barber and Edna Barber (Barbers), and a counterclaim for declaratory judgment by the Town of Douglas [1] (Douglas), regarding the right to use water from Little Box Elder Spring. The water rights had previously been adjudicated to Douglas by an Order of the State Board of Control. The Barbers were seeking a judgment declaring their right to use water pursuant to contracts with Douglas. The district court ruled that the Barbers had no permit or right to the water and dismissed the declaratory judgment action including the counterclaim for a declaratory judgment by Douglas. The issue pressed by Douglas, assuming a justiciable controversy existed, was its right to a summary judgment upholding the sale and storage of water in accordance with its practice. We hold that the district court was in error in ruling that there was no justiciable controversy presented by the Barbers' Complaint. The Barbers clearly sought a declaration of their contractual rights to water from Little Box Elder Spring. We reverse and remand the case for the district court to address the contractual claims, and we make no ruling on the right of Douglas to a summary judgment because

that issue should first be resolved by the district court.

In the Brief of Appellants William E. Barber and Edna Barber, the Barbers describe the issues before the Court as:

1. Whether or not the trial court erred in granting summary judgment by finding Appellants (hereinafter referred to as "Barbers") acquired no contractual rights to the use of water by virtue of the State Board of Control Order dated April 12, 1994 [sic], or the October 12, 1954 Right-of-Way Agreement between the parties.

2. Whether or not Barbers are entitled to a reversal and order granting summary judgment on the uncontested facts as a matter of law.

The Brief of City of Douglas, answering the Barbers, and setting forth the issue raised by Douglas in its cross appeal, states the issues as:

1. Whether the Barbers' lack of any water right in the Little Box Elder Spring requires dismissal of their claims for lack of a justiciable controversy.

2. If the Court determines there is a justiciable controversy, whether the City is nevertheless entitled to summary judgment.

a. Whether the right-of-way, dated October 12, 1954, clearly and unambiguously allows the City of Douglas to use the water from the Little Box Elder Spring for its water customers, whether such customers are located within or without the actual city limits of the City of Douglas.

b. Whether the Barbers are barred by the doctrines of estoppel, latches or waiver from bringing their claim.

c. Whether the Barbers have suffered any loss or damage.

In 1923, the Town of Douglas purchased the land surrounding and the water rights attached to Little Box Elder Spring. A reservation from that grant provided, "grantee

---

* Chief Justice at time of oral argument.

1. Douglas is a city now, but the contractual documents refer to it as the Town of Douglas as did the District Court in its decision letter and the Order Dismissing Complaint and Counterclaim.

[Douglas] agrees to furnish grantors, its assigns or successors, water for stock and garden purposes to be delivered through a two inch pipe controlled by ball and cock valves, said pipe to be installed by grantee herein, but maintained and repaired at all times by grantor, its assigns or successors * * *." The grantor in that conveyance was a predecessor in interest of the Barbers.

Douglas proceeded to secure the water right, and by an order of the State Board of Control, entered on April 12, 1924, the water appropriations that had been sold to the town were "detached from the lands and purposes for which said appropriations were originally granted, and changed to a preferred use for municipal purposes for and within the Town of Douglas, Wyoming * * *." The point of diversion for that water right was changed to the intake of the Douglas Pipe Line, and it then was conducted across the land now owned by Barbers through a wooden stave pipeline.

In 1954, Douglas obtained a new right-of-way across land owned by the Barbers for the installation of a new pipeline. The right of way document, dated October 12, 1954, includes the following in the statement of consideration:

> As a further and additional consideration, First and Second Parties [Joseph Garst and R.C. Maurer, Co–Executors of the estate of Orsa D. Ferguson, Jr.—First Party, and the Barbers—Second Party] covenant and agree that Third Party [Douglas] is not limited in the use of water as purchased from the prior grantors * * * for domestic and municipal use in the Town of Douglas, Wyoming, but may meter, sell or utilize such water as may be necessary for domestic purposes for persons, ranches or families who live or own land on which the new water line crosses between the spring and the Town of Douglas, Wyoming. All water sold shall be subject to the direct control and regulation of Third Party.

Other consideration provided in that document is articulated in this way:

> As an additional consideration to First and Second Parties [Joseph Garst and R.C. Maurer, Co–Executors of the estate of Orsa D. Ferguson, Jr.—First Party, and the Barbers—Second Party] in granting this right-of-way and easement, Third Party [Town of Douglas] agrees:
>
> a. That any surplus water not needed by the Town of Douglas to provide water for the water customers of the Town of Douglas and not needed as an emergency supply, shall be turned into the creek at either the turn-out at the springs or at the turn-out on Saw Mill Creek so that the same may be made available for use by First and Second Parties, all of which is provided under the terms of the original agreement of sale of said water rights.

There is no dispute here that Douglas owns, and has had adjudicated to it, all of the water rights attributable to Little Box Elder Spring, and that the Barbers claim for water exists only under the language of the 1923 conveyance of the land and water rights and the 1954 right-of-way agreement. The contention of the Barbers is that the contracts limit Douglas to providing service within its city limits and to those over whose land the "spring" pipeline passes. The Barbers assert that any other use is, by definition, surplus water to be turned back into the creek. The Barbers brought this action seeking a declaratory judgment with respect to the agreements and injunctive relief to limit the use of water by Douglas in accordance with the agreements. Douglas claims that it consistently has interpreted the contracts with the Barbers to the end that it can provide service to all of its customers, whether they reside within or without the city limits. Douglas counterclaimed against the Barbers seeking declaratory relief incorporating its construction of the contracts. Both of the parties moved for summary judgment.

In ruling on the case the district court held, without regard to the contracts, that the Barbers had no right by virtue of an appropriation or permit to use water from Little Box Elder Spring. The district court held, in effect, that without such a legally cognizable interest in the water the Barbers had no standing to seek the declaratory judgment. The district court then found there was no justiciable controversy and dismissed the Complaint of the Barbers and the Coun-

terclaim of Douglas. The Barbers appealed the ruling against them, and Douglas appealed the ruling against it.

■ A district court's rulings of law are reviewable *de-novo* on appeal. *Garaman, Inc. v. Williams,* 912 P.2d 1121, 1125 (Wyo. 1996). On the record, the parties clearly were seeking an adjudication of their contractual rights; they were not disputing in any way the water right of Douglas; and, the case was one of contract construction not the construction of any right to use water under the permit and appropriation system. We hold the district court erred in denying standing to the Barbers, and we reverse and remand to the district court for a determination of the contract rights of the parties.

■ Article 5, Section 10 of the Constitution of the State of Wyoming confers original jurisdiction upon the district court over "such special cases and proceedings as are not otherwise provided for." The Uniform Declaratory Judgments Act has been adopted by Wyoming, and the statute justifies our trial courts in determining and declaring the interests of contracted parties. WYO. STAT. §§ 1–37–102, 103 (1988). *Cotton v. Brow,* 903 P.2d 530, 532 (Wyo.1995). To accomplish its purpose, the Uniform Declaratory Judgments Act is to be "liberally construed and administered." *Brimmer v. Thomson,* 521 P.2d 574, 577 (Wyo.1974) (begrudging availability of declaratory judgment is inconsistent with its purpose); *Reiman Corp. v. City of Cheyenne.,* 838 P.2d 1182, 1185 (Wyo. 1992). The right to seek a declaratory judgment is limited to those persons "interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise * * *." WYO. STAT. § 1–37–103 (1988). This requirement of an "interest" captures the basic doctrine that there must be a justiciable controversy before relief will be granted. *Brimmer,* 521 P.2d at 576; *Mountain West Farm Bureau Mut. Ins. Co., Inc. v. Hallmark Ins. Co.,* 561 P.2d 706, 709 (Wyo.1977).

In *Reiman Corp., 838 P.2d* at 1186, we reiterated from *Brimmer,* 521 P.2d at 578, the elements of a justiciable controversy:

The jurisprudential principles underlying the standing, ripeness, and mootness doctrines are embodied in the definition of a justiciable controversy adopted in *Brimmer.* The *Brimmer* court identified the following four elements as being necessary to establish a justiciable controversy under the Uniform Declaratory Judgments Act:

1. The parties must have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

Applying these criteria, there is no question that a justiciable controversy was present between the Barbers and Douglas at the time the Complaint seeking declaratory judgment was filed in the district court. The purpose of the Barbers' claim, and Douglas' counterclaim, for declaratory judgment is to settle their rights under the contracts in accordance with the laws of the state of Wyoming. Neither party at any point asserted the controversy involved or related to water law or the water rights held by Douglas. The district court injected that factor when it came to the conclusion that, indisputably, the Barbers had no certificate of appropriation or permit for use of the "spring" water. Based on that conclusion the court

ruled that the Barbers had no valid interest to be determined and for that reason they lacked standing. The court also concluded, relying upon *Mountain West Farm Bureau Mutual Ins. Co.*, that without standing in the Barbers there no longer were two interested parties and a determination regarding the language of the 1923 and the 1954 documents would be meaningless.

In support of this ruling the district court cited *Lewis v. State Bd. of Control*, 699 P.2d 822, 827 (Wyo.1985), for the proposition that water rights cannot be established by use, and the only way to acquire water rights is through an appropriation or permit granted by the state. The *Lewis* case involved a situation in which the parties were seeking to establish water rights by virtue of the doctrine of adverse possession or prescription. We held that water rights cannot be acquired in that fashion, and abandonment cannot be demonstrated by showing adverse use. We did not address a contract to sell water in any way, nor did we hold that under Wyoming law the holder of a water right could not sell or contract for the use of that water. Indeed such a holding would ultimately require every municipal water user to seek approval from the State Board of Control for the right to use household water.

The Barbers point out in their brief that Article 13, Section 5 of the Constitution of the State of Wyoming justifies the right of Douglas to contract to obtain a water right:

> Municipal corporations shall have the same right as individuals to acquire rights by prior appropriation and otherwise to the use of water for domestic and municipal purposes, and the legislature shall provide by law for the exercise upon the part of incorporated cities, towns and villages of the right of eminent domain for the purpose of acquiring from prior appropriators upon the payment of just compensation, such water as may be necessary for the well being thereof and for domestic uses.

The Legislature granted broad authority to cities for the development of public improvements. WYO. STAT. § 15–7–101(a)(ii) and (iii) (1992). Cities and towns are granted authority to extend water systems, to contract within and outside the corporate limits of the town, and to purchase water. WYO. STAT. § 15–7–601 to –605 (1992). Specifically, WYO. STAT. § 15–7–605 (emphasis added) provides that "any city or town **may purchase water from outside its corporate limits upon terms and conditions agreed upon by the parties.**"

The agreements involving the Barbers and Douglas appear to be recognized as lawful in this state. They invest the parties with "existing and genuine" rights and interests. A judgment of the court will effectively resolve the controversy and identify the rights of the parties. The Barbers and Douglas clearly are adversaries presenting positions "advanced with sufficient militancy to engender a thorough research and analysis of the major issues." We hold that the district court erred when it shifted the case away from the contractual issues raised by the parties to one of interpretation of a right to use water, and then found that a justiciable controversy was not present.

We do not address the issue raised by the cross appeal of Douglas. The rights of the parties pursuant to the 1923 and 1954 documents, and the validity of those agreements in the context of the 1924 Order of the State Board of Control, are questions that should be determined in the trial court. Consequently, we refrain from addressing the contractual questions and limit our decision to a ruling that a justiciable controversy over contractual rights was presented to the district court.

The Order Dismissing Complaint and Counterclaim entered in the district court is reversed, and the case is remanded to the district court for further proceedings in accordance with this opinion.