2009 WY 62

**WILLIAM F. WEST RANCH, LLC, L.J. Turner, Karen Turner, Wendy Turner, Jennifer Turner, and Michael Turner, Appellants (Plaintiffs),**

v.

**Patrick TYRRELL, Wyoming State Engineer and The Wyoming Board of Control, Appellees (Defendants).**

**Pennaco Energy Inc. and Devon Energy Production Company, L.P., Appellants (Intervenors/Defendants),**

v.

**William F. West Ranch, LLC, L.J. Turner, Karen Turner, Wendy Turner, Jennifer Turner, and Michael Turner, Appellees (Plaintiffs)**

and

**Patrick Tyrrell, Wyoming State Engineer and The Wyoming Board of Control, Appellees (Defendants).**

Nos. S–08–0161, S–08–0162.

Supreme Court of Wyoming.

May 7, 2009.

Representing Appellants Case No. S–08–0161 and Appellees Case No. S–08–0162: Kate M. Fox and J. Mark Stewart of Davis & Cannon, LLP, Cheyenne, Wyoming; Sarah Klahn of White & Jankowski, Denver, Colorado. Argument by Ms. Fox.

Representing Appellants Case No. S–08–0162: Brent R. Kunz of Hathaway & Kunz, P.C., Cheyenne, Wyoming; John C. Martin of Patton Boggs LLP, Washington, D.C.; Scott P. Klosterman and Margo Harlan–Sabec of Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Martin.

Representing Appellees Case Nos. S–08–0161 and S–08–0162: Bruce A. Salzburg, Wyoming Attorney General; Jay Jerde, Deputy Attorney General; Peter K. Michael, Senior Assistant Attorney General; Marion Yoder, Senior Assistant Attorney General. Argument by Ms. Yoder.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] William F. West Ranch, LLC (West) and the Turners (Turner) appeal the district court's determination that it did not have jurisdiction over their declaratory judgment action challenging the Wyoming State Engineer's and Wyoming Board of Control's (hereinafter referred to collectively as "the State") administration of underground water

produced and stored as part of the process of extracting coal bed methane (CBM). The district court concluded that the plaintiffs had not presented a justiciable controversy because the issues were currently being considered by the legislative and executive branches of state government.

[¶ 2] We affirm the district court's ruling on the motion to dismiss, although on different grounds. In order for a controversy to be justiciable, the plaintiffs must allege a sufficient tangible interest and that the judicial decision they request will have a practical effect on that interest. A justiciable controversy does not exist under the Declaratory Judgments Act if the plaintiffs are asking for a declaration to remedy someone else's problem or a potential future problem that is not certain to occur. West and Turner have failed to allege a connection between a specific constitutional or statutory obligation with which the State has failed to comply and a particular harm they, as individuals, have suffered or will certainly suffer in the future. As such, they have not shown that a judicial declaration requiring the State to undertake a particular function will have a practical effect on them. In addition, a declaratory judgment is not available when the questions should initially be decided by an administrative agency. West and Turner have not utilized available administrative processes to resolve many of their concerns.

[¶ 3] CBM producers Pennaco Energy, Inc. (Pennaco) and Devon Energy Production Company, L.P. (Devon) contest the district court's ruling that only conditionally allowed them to intervene in the declaratory judgment action. Given our affirmance of the district court's dismissal of this case, Penna-

co's and Devon's appellate arguments regarding their right to intervene are moot and need not be considered.

## ISSUE

[¶ 4] The parties state various issues on appeal. However, the following issue is dispositive:

Have the plaintiffs sufficiently articulated any justiciable claim under Wyoming's Declaratory Judgments Act?

## FACTS

[¶ 5] The Powder River Basin in northeastern Wyoming has, in recent years, been a rich source of CBM production. In order to extract CBM, the producer must remove underground water from the coal seam, resulting in the production of large quantities of water. Producers must obtain a groundwater well permit from the State Engineer before they may drill a well to dewater the coal. In addition, if they are going to store the produced water in a reservoir, producers must obtain a reservoir permit from the State Engineer.

[¶ 6] West and Turner own property affected by CBM water production. On June 14, 2007, they filed a complaint and petition for declaratory judgment in the district court, which they later amended. The plaintiffs broadly claimed the State is not regulating CBM water production in compliance with Wyoming's constitution or statutes and that their property has been damaged by CBM water.[1] The State filed a motion to dismiss the complaint arguing West and Turner "intend this to be a public interest law-

---

1. West and Turner attached three documents to their complaint, including: 1) the Interim Report from the Wyoming Coal Bed Natural Gas Water Management Task Force (2006), which concluded:
   a. The State Engineer has determined that water production for CBM extraction is a beneficial use.
   b. The current regulatory structure is inadequate to protect downstream landowners; and
   c. The State Engineer lacks specific authority to regulate quantity of water discharge;
   2) The State Engineer's "Guidance: CBM/ Ground Water Permits" dated March 2004 which instructs applicants: a groundwater ap-

propriation application must be submitted and approved before drilling of a well may commence; the application must include the amount of ground water to be withdrawn in gallons per minute and acre feet per year; and if the applicant plans to store CBM water in a reservoir, a reservoir permit must be obtained; and 3) the State Engineer's Revised Interim Policy memo for administering CBM by—product water dated April 26, 2004, which discusses impoundment of CBM water in reservoirs, both on and off channel, and specifies that CBM water placed in reservoirs is put to beneficial use by: a) inactive—evaporation or infiltration; or b) active—discharging for specific uses.

suit" and they had not alleged individual harms that would be remedied by their requested relief. The State also maintained that a judicial decision in accordance with the plaintiffs' declaratory judgment complaint would invade the provinces of the legislative and executive branches of government and thereby violate the separation of powers doctrine.

[¶ 7]   Pennaco and Devon filed motions to intervene in the action, claiming a judicial decision in the plaintiffs' favor would impair their rights because they own CBM leases in Wyoming and hold many water well and reservoir permits issued by the State. The district court conditionally granted their motions to intervene, allowing intervention in the event it denied the State's motion to dismiss.

[¶ 8]   Concluding there was no justiciable controversy because the legislative and executive branches were currently working on the regulation of CBM water, the district court granted the State's motion to dismiss. West and Turner appealed from the dismissal order in Case No. S–08–161, and Pennaco and Devon appealed from the court's conditional intervention order in Case No. S–08–162.

### STANDARD OF REVIEW

■■■ [¶ 9]   We review the threshold question of jurisdiction *de novo*. *Heilig v. Wyo. Game and Fish Comm'n,* 2003 WY 27, ¶ 8, 64 P.3d 734, 737 (Wyo.2003). When determining jurisdiction in a declaratory judgment action, "we examine the policies underlying both the Uniform Declaratory Judgments Act and the doctrine of justiciability to determine if this is a proper case for judicial action." *Reiman Corp. v. City of Cheyenne,* 838 P.2d 1182, 1185 (Wyo. 1992). In reviewing dismissal of a complaint for want of jurisdiction, "we focus on the allegations contained in the complaint and liberally construe them in the light most favorable to the plaintiff." *Cox v. City of Cheyenne,* 2003 WY 146, ¶ 7, 79 P.3d 500, 504–05 (Wyo.2003). Consistent with the concept of "notice pleading" incorporated in W.R.C.P. 8, if the allegations contained in the complaint "admit of any possibility that

they may be the 'proper subject of relief,' " we will not deprive the plaintiff of the opportunity to litigate its claims on the merits. *Martinez v. Associates Financial Servs. Co.,* 891 P.2d 785, 788 (Wyo.1995). However, liberal construction of the pleadings does not " 'excuse omission of that which is material and necessary in order to entitle [one to] relief.' " *Id.* at 790, quoting *Sump v. City of Sheridan,* 358 P.2d 637, 642 (Wyo.1961).

### DISCUSSION

*1.   Jurisdiction*

####   a.   Uniform  Declaratory  Judgments Act

[¶ 10]   Our starting place for determining jurisdiction is the Uniform Declaratory Judgments Act, Wyo. Stat. Ann. §§ 1–37–101 through 1–37–115 (LexisNexis 2007). Section 1–37–102 establishes the scope of the act: "Courts of record within their respective jurisdictions may declare rights, status and other legal relations whether or not further relief is or could be claimed." Section 1–37–114 emphasizes the remedial purposes of the act:

> The Uniform Declaratory Judgments Act is remedial. Its purpose is to settle and to afford relief from uncertainty and" insecurity with respect to legal relations, and is to be liberally construed and administered.

■■■ [¶ 11]   The Declaratory Judgments Act does not, however, extend the jurisdiction of the courts. *Reiman,* 838 P.2d at 1185–86. Section 1–37–103 defines the rights which may be subject to declaration under the act and the parties who may seek a declaration of their rights:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

*See also, Barber v. City of Douglas*, 931 P.2d 948, 951 (Wyo.1997). Thus, under the relevant statutes, in order for a court to have jurisdiction over a declaratory judgment action, the "right" to be declared must fall within the scope of the act and the plaintiff must be an "interested" person. *Cox*, ¶ 8, 79 P.3d at 505.

The "requirement of an 'interest' captures the basic doctrine that there must be a justiciable controversy before relief will be granted." *Barber v. City of Douglas*, 931 P.2d 948, 951 (Wyo.1997). Generically, a justiciable controversy is defined as a controversy fit for judicial resolution. *Reiman Corp. v. City or Cheyenne*, 838 P.2d 1182, 1186 (Wyo.1992). Many doctrines are encompassed within the concept of justiciability including standing, ripeness, and mootness. *Id.*

*Id.*, ¶ 9, 79 P.3d at 505.

[¶ 12] In *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo.1974), we adopted a four-part test for determining whether a party presents a justiciable controversy to maintain a declaratory judgment action in Wyoming.[2]

1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.

2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.

3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.

4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Cox*, ¶ 10, 79 P.3d at 505, quoting *Reiman*, 838 P.2d at 1186.

[¶ 13] Our case law provides guidance on applying these factors and establishes the parameters of what constitutes a justiciable claim under the Declaratory Judgments Act. In *White v. Board of Land Comm'rs*, 595 P.2d 76, 79 (Wyo.1979), we held "the Declaratory Judgments Act gives the courts no power to determine future rights or anticipated disputes or controversies." Instead, the plaintiffs must present an existing and genuine controversy to the court in order for it to have jurisdiction to render a declaratory judgment. *Id.* When the Board of Land Commissioners had previously issued a decision giving state land lessees (the Whites) the right to meet the highest bid and acquire state land slated for public auction by the Board and that agency decision was not appealed, this Court held the Board could not seek a judicial decision on the validity of its action. We concluded the Board's complaint seeking a declaratory judgment was simply

---

2.  The State relies heavily on federal law in arguing that the plaintiffs do not present a justiciable controversy. Wyoming jurisprudence as to the requirements for presenting a justiciable declaratory judgment action is well developed. Consequently, we will rely on state precedent rather than federal law in resolving this case. Nevertheless, our law is, in many respects, consistent with federal law. For example, in *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the United States Supreme Court reviewed the U.S. Constitution Art. 3, § 1 "case or controversy" requirement. The Supreme Court ruled that the plaintiffs, who were parents of black children, had alleged an injury when they claimed the IRS's allowance of tax exempt status to racially segregated private schools diminished their children's ability to receive an education in a racially integrated school. However, the plaintiffs did not have standing to maintain the action because they could not trace the governmental conduct to the alleged injury. *Id.* at 757, 104 S.Ct. 3315. The federal "traceability" analysis is similar to our requirement that a decision of the court must be one that can effectively operate on the parties. In other words, if the plaintiff's injury is not traceable to the governmental action, then a court decision on the legality of the action will not effectively terminate the controversy. *See also, Mountain West Farm Bureau Mutual Ins. Co., v. Hallmark Ins. Co.*, 561 P.2d 706, 710 (Wyo.1977) (noting the similarities between Wyoming and federal law as to the "actual controversy" requirement).

"a request for legal advice and opinion" as to the effect of the agency's action because there was no guarantee that the Whites would exercise their right to meet the highest bid after the auction. *Id.* at 80.

[¶ 14] In contrast, *Rocky Mountain Oil & Gas Ass'n v. State,* 645 P.2d 1163 (Wyo. 1982), established that a justiciable controversy did exist where the oil and gas producers challenged rules and regulations promulgated by the Environmental Quality Council for the disposal of water from oil production activities as being in excess of its statutory powers. *Id.* at 1166–69. Although the plaintiffs apparently had not applied for a permit to dispose of water from their oil production activities when they initiated their declaratory judgment action, the rules required "immediate and present action" by the plaintiffs. We concluded the plaintiffs had standing because a judicial ruling on the issues presented would effectively terminate a controversy. *Id.*

[¶ 15] The distinction between Rocky Mountain and *White* is instructive. The Rocky Mountain plaintiffs affirmatively alleged that they were required to seek permits under the challenged regulations and, consequently, would certainly be affected by the agency action in the very near future. However, there was no such certainty that an actual controversy would develop in *White. See also, Brimmer,* 521 P.2d 574 (ruling that the court had jurisdiction to render a declaration as to the ability of incumbent state senators to run for the office of governor, even though they had not yet filed as candidates, because they alleged their intent to do so).

[¶ 16] *Budd v. Bishop,* 543 P.2d 368 (Wyo.1975) did not explicitly apply the justiciable controversy factors; however, that case provides a useful discussion of the requirements for alleging an affected interest for a declaratory judgment in the context of water law. Budd challenged the constitutionality of the Surplus Water Law and the State Engineer's interpretation and application of the law. This Court concluded that Budd could not maintain his challenge because he did not assert that he owned any rights affected by the statute.

[A] party who asserts the violation of a constitutional provision by a legislative enactment must show an adverse effect upon his rights. No one is entitled to present a claim that a particular statute is unconstitutional as to other persons or classes of persons, but he must demonstrate injury to his own rights.

*Id.* at 371–72 (citations omitted).

[¶ 17] *Mountain West Farm Bureau Mut. Ins. Co. v. Hallmark Ins. Co.,* 561 P.2d 706 (Wyo.1977), provides another example of the failure of a plaintiff to allege an impact on its interests sufficient to sustain a declaratory judgment action. In that case, the parties each issued liability insurance for activities on rodeo grounds. *Id.* at 707. Mountain West sought a declaration as to the rights and liabilities of the parties for an accident on the grounds. It did not, however, place its insurance policy in the record. This Court held that the trial court lacked jurisdiction to render a judgment under the Declaratory Judgments Act because, in the absence of the policy being made part of the record, Mountain West's rights were theoretical. *Id.* at 711–12. "[A] controversy must be demonstrated in which the parties have a real as distinguished from a theoretical concern." *Id.* at 709.

[¶ 18] Similarly, this Court ruled long ago in *Anderson v. Wyo. Dev. Co.,* 60 Wyo. 417, 154 P.2d 318, 341–42 (1944), that in order for a declaratory judgment to lie, it must be based upon an actual and existing disagreement.

"This court, even under the provisions of the Uniform Declaratory Judgments Act, should not undertake to decide or declare the rights or status of parties upon a state of facts which is future, contingent, and uncertain."

*Id.* at 341 (quoting *Tanner v. Boynton Lumber Co.,* 98 N.J. Eq. 85, 129 A. 617, 619 (1925)).

[¶ 19] In addition, declaratory judgment is not available in administrative cases when the question should initially be decided by the agency. An agency created

by the legislature to perform a specific function is considered to have special expertise. *Rissler & McMurry Co. v. State*, 917 P.2d 1157, 1160–61 (Wyo.1996). Honoring the administrative process is especially important in cases requiring fact finding or application of discretion by the agency. *See, Wyo. Dep't of Revenue v. Exxon Mobil Corp.*, 2007 WY 21, ¶ 18, 150 P.3d 1216, 1223 (Wyo.2007). This Court discussed the rationale behind this concept in *Rocky Mountain*, 645 P.2d at 1168 (citations omitted):

> Where the action would result in a prejudging of issues that should be decided in the first instance by an administrative body, it should not lie. This is because, if it be otherwise, all decisions by the several agencies could be bypassed, and the district court would be administering the activities of the executive branch of the government.

[¶ 20] Applying this underlying principle, we ruled in *Bonnie M. Quinn Revocable Trust v. SRW, Inc.*, 2004 WY 65, ¶¶ 6–11, 91 P.3d 146, 148–49 (Wyo.2004), that the plaintiffs had the obligation to seek zoning relief through the board of county commissioners before they could maintain an action seeking a declaration that the zoning laws required the defendants to apply for and obtain a conditional use permit prior to drilling for minerals on the Quinn property.

### b. West's and Turner's Declaratory Judgment Complaint

[¶ 21] To determine whether West and Turner have alleged a justiciable controversy, we start with the four causes of action set out in their amended complaint. Their allegations are extensive and somewhat vague, and we summarize them as follows:

1. The State has violated the Wyoming Constitution by failing to consider the "public interest" and "all the various interests involved" when administering CBM water.[3] In addition, the plaintiffs allege generally that the State has violated their right to due process. We assume they are referring to their assertion in the "Facts Common to All Claims" section of the complaint that the State does not provide "neighboring landowners such as Plaintiffs" with notice and an opportunity to be heard before issuing permits.[4]

2. The State has violated Wyoming statutes in administering CBM water by failing to protect the public interest in issuing CBM permits[5] and to determine the amount of water which may be withdrawn from groundwater wells and placed in reservoirs in accordance with the concepts of beneficial use and

---

3. The plaintiffs refer to the following constitutional provisions in support of their first cause action:
- Wyo. Const. Art. 8, § 1: "The water ... within the boundaries of the state, are hereby declared to be the property of the state."
- Wyo. Const. Art. 8, § 3: "Priority of appropriation for beneficial use shall give the better right. No appropriation shall be denied except when such denial is demanded by the public interests."
- Wyo. Const. Art. 1, § 31: "Water being essential to industrial prosperity, of limited amount, and easy of diversion from its natural channels, its control must be in the state, which, in providing for its use, shall equally guard all the various interests involved."

4. The plaintiffs also assert, without explanation, that the State's actions amount to an unconstitutional exercise of absolute and arbitrary power. They do not provide any cogent argument on this assertion in their appellate brief; thus, we will not consider it. *Pittard v. Great Lakes Aviation*, 2007 WY 64, ¶ 44, 156 P.3d 964, 976 (Wyo.2007).

5. The plaintiffs point to the following statutes in support of their claims:
- Wyo. Stat. Ann. § 41–3–931 (LexisNexis 2007): If the State Engineer finds granting of application for a well would not be in public's water interest, then he may deny it.
- Wyo. Stat. Ann. § 41–4–503 (LexisNexis 2007): "[I]t shall be the duty of the state engineer to approve all applications made in proper form, which contemplate the application of the water to a beneficial use and where the proposed use does not tend to impair the value of existing rights, or be otherwise detrimental to the public welfare. But where there is no unappropriated water in the proposed source of supply, or where the proposed use conflicts with existing rights, or threatens to prove detrimental to the public interest, it shall be the duty of the state engineer to reject such application and refuse to issue the permit asked for."
- Wyo. Stat. Ann. § 41–3–933 (LexisNexis 2007): "The state engineer may issue any permits subject to such conditions as he may find to be in the public interest."

prevention of waste.[6] West and Turner also claim that the State has abdicated its statutory duty to adjudicate and inspect wells and reservoirs.[7]

3. The State's actions violate the plaintiffs' due process rights. Although they do not explain this due process allegation, we assume they are referring to their assertion that "neighboring landowners" do not receive notice and an opportunity to be heard when the State considers applications for CBM water permits. As such, it is a restatement of part of their first cause of action.

4. The State has violated the Wyoming Administrative Procedure Act (WAPA), Wyo. Stat. Ann. §§ 16-3-101 through 16-3-115 (LexisNexis 2007), governing agency rulemaking. Specifically, the plaintiffs claim the State has failed to promulgate rules pertaining particularly to CBM well and reservoir permitting and is, instead, unlawfully regulating by "policy" and "guidance" as evidenced by the exhibits to the complaint.[8]

### c. Application of Declaratory Judgment Law to Plaintiffs' Complaint

[¶ 22] As explained in more detail below, we conclude West's and Turner's claims and requests for relief are simply too amorphous to be justiciable. The first two *Brimmer* elements for a justiciable controversy require the plaintiffs to allege that they have a tangible interest which has been harmed and that a judicial decision in their favor will effectively remedy the harm. In the context of this case, West and Turner needed to allege: the State has a constitutional or statutory duty to undertake some function in administering CBM water; it failed or will fail to do so on CBM facilities affecting their property; that particular failure by the State has damaged or will damage their property in an actual, as opposed to theoretical, way; and a declara-

---

6. The plaintiffs refer to the following provisions in support of their claims:
   - Wyo. Stat. Ann. § 41-3-101 (LexisNexis 2007): Beneficial use is limit of a water right.
   - Wyo. Stat. Ann. § 41-3-909(a) (LexisNexis 2007): It is the policy of the state to conserve underground water resources and the state engineer and board of control are charged with requiring well owners to prevent waste of underground water either above or below surface.
   - Wyo. Stat. Ann. § 41-4-502 (LexisNexis 2007): The State Engineer has the duty to examine applications to make sure they contain necessary information including the "amount of the proposed beneficial use."

7. The plaintiffs cite to Wyo. Stat. Ann. § 41-3-935 (LexisNexis 2007) in support of their claim:
   (b) Adjudication of all ground water rights except stock watering and domestic uses of ground water referenced in W.S. 41-3-907 shall proceed upon completion of the work according to the terms of the permit and the recording on forms furnished by the state engineer of such information as is deemed necessary concerning the works, and the filing of a map signed by a Wyoming licensed professional engineer or land surveyor, showing the location of the well and the point or points of use. The state engineer or his authorized representative shall inspect the works, the lands irrigated or other uses being made of the water upon receipt of the map. The adjudication of stock watering and domestic uses of ground water referenced in W.S. 41-3-907 may be initiated by the state engineer or the appropriator of record and will not require the filing of a map

signed by a Wyoming licensed professional engineer or land surveyor, showing the location of the well and the points and areas of use or require the inspection by the state engineer or his authorized representative of the works, the lands irrigated or other uses being made of the water unless, in the discretion of the state engineer, such procedures are deemed necessary and appropriate. At this time the board may consider for adjudication the ground water rights upon proof of beneficial use being submitted by the appropriator.
   (c) Adjudication shall proceed in the same manner prescribed for the adjudication of surface water appropriations once the state engineer or his authorized representative has reported his findings to the board. A ground water appropriation attaches to the land for irrigation, or for such other purposes or object for which it was acquired.

8. West and Turner claim the State violates:
   - Wyo. Stat. Ann. § 41-4-211(b) (LexisNexis 2007): The board of control is authorized to "adopt reasonable rules and regulations to carry out the duties imposed by law" to it.
   - Wyo. Stat. Ann. § 41-3-909 (LexisNexis 2007): The state engineer is authorized, on the advice and consent of the board of control, to prescribe rules that are necessary or desirable to effectively administer the policy of conserving underground water.
   - Wyo. Stat. Ann. § 41-3-308 (LexisNexis 2007): The state engineer is authorized and directed to promulgate regulations for construction, etc. of dams, diversion systems and reservoirs to carry out the purposes of the act.

tion that the State has the responsibility to undertake that specific function will effectively remedy their harm.

[¶ 23] While West and Turner do allege the State has generally failed to comply with certain statutory and constitutional duties in administering CBM water and that they have a genuine interest in that they own property that has been harmed by CBM water, they do not allege facts that connect the asserted general deficiencies in the State's administration of CBM water to direct harm they have suffered or will suffer in the future. Nor, do they allege facts that would indicate a declaratory judgment in accordance with their particular requests for relief will have an actual effect on their properties.

[¶ 24] It is very important to focus on what West and Turner allege and what they do not allege in terms of a tangible interest and the utility of a judicial ruling. Many of their allegations are very broad. For example, they state:

Plaintiffs bring this action to have the Court resolve constitutional questions regarding management of Wyoming's most valuable and finite resource: water. This is a matter of great public importance, impacting the social and economic realities of the present-day organization of Wyoming's society;

and

The future of Wyoming's water supply, its lands, and the fabric of its society are threatened by the waste of Wyoming's ground water, and by the actual and potential damage and injury to soil, crops, vegetation, existing water wells, and ground water and surface water rights that is the result of Defendants' failure to administer

water pursuant to the Wyoming Constitution and laws.

[¶ 25] With regard to their specific interests, the plaintiffs state in the "Parties" section of their amended complaint: [9]

8. Plaintiff [West] ... owns and operates West Ranch. For over fifty years Bill and Marge West have produced crops and raised cattle on the 13,000 acre property. The normal irrigation of the Wests' ranch is prevented by the saline and sodic CBM water that has mixed with the water supply from Spotted Horse Creek. Flooding from CBM water has also killed vegetation and damaged the soil of the ranch's valuable bottom lands. CBM water stored in reservoirs has flooded bottom lands on the ranch and otherwise leaked out, damaging the soil and killing vegetation.

9. Plaintiffs [Turner] own the Turner Ranch on Bates Creek in the Cheyenne River Drainage. The three permitted wells they use for domestic and stock watering purposes are either dried up or threaten to dry up as a result of CBM ground water pumping in the area.

[¶ 26] The plaintiffs' allegation that they own property affected by CBM water indicates they have a tangible interest and satisfies the first *Brimmer* element. To meet the second element of the *Brimmer* test and demonstrate that the controversy is one upon which a judgment of the court may effectively operate, they must allege that the State's failures have affected their property. In other words, the "court's decision must have some practical effect upon the litigants."

---

9. The plaintiffs also provide the following statements in their amended complaint pertaining to the specific impacts of the State's actions on their properties. In the introductory paragraphs of their amended complaint, they allege:

   6. Plaintiffs seek to prevent further injury and damage to their adjudicated water rights, the lands they use for forage and crops, and their trees and riparian vegetation that provide aesthetic value and stock and wildlife shelter.

   7. Plaintiffs have been foreclosed of the opportunity to prevent continuing damage to their water rights, lands, and crops by the

State's Engineer's summary and conclusory determinations to grant permits for CBM ground water diversions and storage, which violate both the Plaintiffs' due process rights and the State Engineer's and Board of Control's constitutional obligations.

In the "Facts Common to all Claims" section of the amended complaint, the Plaintiffs allege:

   23. The [State Engineer] accepts applications and issues permits for storage of CBM water in on and off-channel reservoirs without providing neighboring landowners such as Plaintiffs with notice or an opportunity for a hearing to object to the permit issuance.

*Reiman*, 838 P.2d at 1187. *See also, Holly Sugar Corp. v. Fritzler*, 42 Wyo. 446, 463, 296 P. 206, 210 (Wyo.1931); *Heilig*, ¶ 10, 64 P.3d at 738. Thus, West and Turner must allege facts to link the State's failures to follow its constitutional and statutory duties and the remedy they seek to impacts on their property.

[¶ 27] When we examine the relief requested by West and Turner, we find no allegation as to how that relief will redress or prevent the damage they claim their property has incurred or will certainly incur in the future. They ask that the court enter a judgment declaring that the State's practice of permitting CBM groundwater wells and reservoirs unconstitutional and in violation of the applicable statutes and rules. They also ask for specific declarations, which we summarize as:

1. The current permitting of CBM ground water and reservoirs violates Wyoming's statutes because it fails to quantify the amount of water put to beneficial use for CBM production.

2. The [State Engineer's] practice of permitting CBM ground water without notice and an opportunity for a hearing violates the constitutional right to due process of law under the United States and Wyoming constitutions.

3. The State cannot issue permits for CBM groundwater wells and reservoirs without adopting rules pursuant to WAPA specifically addressing CBM water and defining the "public interest."

4. Placement of CBM water in reservoirs and pits for the purpose of achieving disposal of that water through evaporation, infiltration and/or flushing is not a beneficial use of water.

5. The State must evaluate and weigh the public and various interests as part of its duty to supervise Wyoming's water.

6. The State must inspect and adjudicate all CBM groundwater wells and reservoirs used to store CBM water.

[¶ 28] The plaintiffs attack the State's process for issuing CBM water permits throughout Wyoming and within the Powder River Basin.[10] For example, West and Turner allege that the State has failed to fulfill its duty to consider the public interest in making CBM water permitting decisions. They suggest that, if the State had properly considered the public interest, it would have denied the permits or at least incorporated a condition that the applicants have a disposal plan to reduce the impacts on downstream landowners. The plaintiffs do not, however, allege that the State issued a particular permit affecting their property without considering the public interest, ask that any permit affecting their property be revoked or denied for failure to consider the public interest, or assert with any certainty that permits will be issued in the future that will actually injure their interests. They also do not explain how the relief they request, i.e., that the State be required to consider the public interest before approving applications for well and reservoir permits, will address any past or future harm to them. Instead, they simply assert that future unspecified CBM water production will cause long term damage to the state.

[¶ 29] Even if we were to declare that the State is required to consider the public interest, a result that seems to be required by the

---

10. The Colorado Supreme Court recently issued a decision pertaining to the Colorado State Engineer's responsibility to regulate CBM water. *Vance v. Wolfe*, 205 P.3d 1165 (Colo.2009). The Colorado State Engineer did not regulate CBM water wells because it did not consider diversion for CBM production to be a beneficial use but rather regarded it as a nuisance. By failing to issue permits or otherwise regulate CBM water wells, the State Engineer was allowing out-of-priority diversions of water for CBM production. Some Colorado ranchers brought a declaratory judgment action, seeking a declaration that diversion of groundwater for CBM production was a beneficial use and, consequently, should be regulated by the Colorado State Engineer. There was no discussion in *Vance* about the ranchers' standing to bring the action, but the opinion does state that they alleged that their vested senior water rights were being harmed by the State's failures. The Colorado Supreme Court ruled that diversion of ground water for CBM production is a beneficial use and the State Engineer was, therefore, required to regulate it. *Vance* is obviously different from the case presented here as the State does regulate CBM water in Wyoming, although West and Turner do not agree with its methods.

applicable statutory and constitutional provisions, we cannot be assured that such a declaration would have a practical effect on the plaintiffs. This situation is similar to *White, Mountain West* and *Anderson* where this Court ruled that the courts do not have the power to determine anticipated or theoretical disputes and is distinguishable from *Rocky Mountain* where there was a specific allegation that the plaintiffs were required to immediately apply for permits under the disputed regulatory scheme.

[¶ 30]  As we explained in *Cranston v. Thomson*, 530 P.2d 726, 729 (Wyo. 1975), the difference between an abstract question that is nonjusticiable and a controversy contemplated by the Uniform Declaratory Judgments Act is one of degree. "Basically, the problem in each case is whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the declaratory judgment." *Id.*, citing *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113 (1969). Persons seeking a declaratory judgment, therefore, have the duty to allege sufficient specific facts showing that a judgment in their favor will have an immediate and real effect on them. This is true even under the concept of notice pleading. To find that West and Turner have a justiciable controversy in this case, we would have to make a number of assumptions about facts that are material and necessary to their claims. For instance, we would have to assume that, because their properties have been damaged by CBM water, an order requiring the State to consider the public interest in its permitting decisions would mitigate that damage or prevent it in the future. West and Turner have not made those allegations, and it is not the court's function or duty to make such assumptions. In the absence of allegations of material and necessary facts, the State is entitled to an order of dismissal for failure to state a claim upon which relief can be granted. *Martinez*, 891 P.2d at 790.

[¶ 31]  It should also be noted that determining whether an agency has properly considered the public interest requires review of the facts of a particular action. *See, e.g., Shokal v. Dunn*, 109 Idaho 330, 707 P.2d 441 (1985) and *Pyramid Lake Paiute Tribe of Indians v. Washoe County*, 112 Nev. 743, 918 P.2d 697 (1996) (considering whether the involved state agencies had properly considered the public interest when granting specific water appropriation permits). By failing to challenge a particular permit, the plaintiffs have not provided a context in which a court could determine whether the public interest had been considered.

[¶ 32]  The declarations requested by West and Turner address the harm they claim the permitting process is causing the citizenry of the state and the public interest. However, they are not entitled to a declaratory judgment that the State's actions violated the rights of other persons, *Budd*, 543 P.2d at 372.[11] It is not the function of the judicial branch to pass judgment on the general performance of other branches of government. Instead, it is our function to resolve specific controversies between adverse parties and determine whether those parties, in the context of that controversy, have complied with the law. By failing to challenge a specific permitting action, West and Turner have not satisfied the second *Brimmer* requirement.

[¶ 33]  The same problem exists with regard to their due process claim. West and Turner do not allege that they were deprived of notice and an opportunity to be heard on any particular permit that affects their property. Instead, they are apparently seeking a

---

11.  It appears that the plaintiffs may be attempting to act as "private attorneys general" by requesting, on behalf of the citizenry of the state, a ruling that the relevant agencies are not following the law. However, such an action may be maintained only if there is a statute specifically giving a party the right to act as a private attorney general to enforce the state's laws. For example, the Environmental Quality Act contains such a provision at Wyo. Stat. Ann. § 35–11–904. *See also, Belle Fourche Pipeline Co. v. Elmore Livestock Co.* 669 P.2d 505 (Wyo.1983) (interpreting an earlier version of the EQA's private attorney general statute). The plaintiffs do not direct us to any statute giving them the authority to act as private attorneys general to secure a judgment, on behalf of the general citizenry, that the State is violating the law.

declaration that the State's procedures violate the due process rights of "neighboring landowners" in general. This assertion presents an abstract legal question rather than the requisite "substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the declaratory judgment." *Cranston*, 530 P.2d at 729.

[¶ 34] West's and Turner's complaints regarding the lack of adjudication and inspection of CBM wells and reservoirs suffer from similar deficiencies. Adjudication of water rights serves the purposes of establishing the relative priorities of water users and quantifying those rights, in accordance with the constitutional and statutory concept of beneficial use. *See, e.g., In re Big Horn River System*, 2004 WY 21, 85 P.3d 981 (Wyo.2004); *Nichols v. Hufford*, 21 Wyo. 477, 133 P. 1084 (Wyo.1913). Inspection serves the obvious purpose of determining whether permitted reservoirs and wells meet the legal requirements.

[¶ 35] The plaintiffs claim the statutes require the State to adjudicate CBM wells and reservoirs and the State has failed to do so for a "majority" of the CBM wells and reservoirs. By alleging that a majority of the CBM wells and reservoirs have not been adjudicated, they are implying that some of them have been. In order to present a justiciable controversy, the plaintiffs are required to assert that the wells and reservoirs affecting their lands (i.e., their tangible interests) have not been adjudicated and that failure by the State has harmed their properties. They do not make that specific allegation. In addition, the plaintiffs do not allege that a judicial order requiring the State to undertake its adjudication function on a state-wide basis will remedy the damages they have suffered or will certainly suffer in the future.

[¶ 36] Turner does allege domestic and stock wells on their property have dried up or threaten to dry up because of CBM water pumping in the area. They do not, however, allege that their wells or the relevant CBM wells have not been adjudicated; they have requested an adjudication and the State has refused; particular CBM wells are interfering with their wells; any particular user is taking more water than necessary for beneficial use; or an order requiring the State to undertake state-wide adjudication of CBM wells will remedy their alleged harm. Thus, the plaintiffs have not alleged sufficient facts to show that they are entitled to the relief they request-an order directing the State to undertake adjudication of all CBM wells and reservoirs-under the Declaratory Judgment Act.

[¶ 37] West and Turner also assert that the statutes require the State to inspect completed works and assert that water stored in CBM reservoirs has flooded their bottom lands and is otherwise leaking out and damaging their property. They do not, however, identify the CBM reservoirs that are damaging their properties or how a judicial declaration that the State is generally required to inspect reservoirs would effectively redress their particular grievances. Thus, the plaintiffs have not successfully alleged their interest would be protected by an order of the court.[12] In *Budd*, the plaintiff did not allege how the Surplus Water Law affected his water rights and, therefore, he did not present a justiciable claim. Similarly, the plaintiffs here do not connect the State's alleged failures to follow its statutory duties for adjudication and inspection to their particular circumstances. By requesting some type of

---

12. We note that West and Turner could bring a civil action against the individual CBM producers whose water practices are damaging their property. This Court has seen numerous cases presenting similar issues. In *Reed v. Cloninger*, 2006 WY 37, 131 P.3d 359 (Wyo.2006), we stated that a water user who fails to exercise reasonable care in directing irrigation or waste water is negligent, and the ditch owner will be responsible for the damages neighbors suffer as a result of his negligence. *Id.*, ¶ 13, 131 P.3d at 365. In *Davis v. Consolidated Oil & Gas, Co.*, 802 P.2d 840 (Wyo.1990), the landowners brought a negligence and trespass action against an oil and gas producer on the basis that the company's failure to properly plug an abandoned oil and gas well resulted in salty seepage water damaging their land. In *Hoy v. Miller*, 2006 WY 147, 146 P.3d 488 (Wyo.2006), a landowner brought an action seeking recovery for damages to his land caused by a leaking reservoir. *See also, Howell v. Big Horn Basin Colonization Co.*, 14 Wyo. 14, 81 P. 785 (Wyo.1905).

general ruling that the State is improperly administering CBM water without challenging a specific action or requesting individualized relief, the plaintiffs' complaint is a perfect example of a nonjusticiable controversy and a failure to meet the minimal requirements for notice pleading under W.R.C.P. 8.

[¶ 38] Moreover, as we explained in Rocky Mountain and *Bonnie M. Quinn*, when the matter at issue is one that has been delegated to an administrative agency, such as whether to grant a permit, the challenger must utilize available administrative processes rather than bring a declaratory judgment action. By refusing to consider a declaratory action in matters requiring agency expertise, we avoid usurping the agency's fact finding and discretionary functions. Such a situation is distinguishable from when a party challenges the agency's statutory authority to act, like the producers' challenge to the EQC's authority to adopt rules in *Rocky Mountain*, which is an appropriate declaratory judgment action.

[¶ 39] There are administrative remedies available to West and Turner for many of their complaints, and they apparently have not availed themselves of those procedures. First, Turner could file a well interference action pursuant to Wyo. Stat. Ann. § 41–3–911 (LexisNexis 2007)[13] to remedy the alleged interference with their wells by CBM wells. A well interference action would provide a specific factual scenario for the agencies and, on judicial review, the courts to consider.

[¶ 40] To the extent the plaintiffs are asserting that CBM producers are using more water than necessary for production of methane gas, i.e., exceeding the amount necessary for beneficial use and/or wasting water, they have other remedies available to them to protect their water rights in the affected streams and/or wells. In *Zezas Ranch, Inc. v. Board of Control*, 714 P.2d 759 (Wyo.1986), we stated that, under the proper circumstances, the Board of Control has jurisdiction to consider a petition from a surface water user to adjudicate another user's right. *Id.* at 761. Presumably, the State has similar powers with respect to groundwater wells. Thus, if the appropriate circumstances were presented, the plaintiffs could petition the Board of Control for a determination of the quantity of water another water right holder is entitled to use.

[¶ 41] The plaintiffs could also petition the district court, pursuant to § 16–3–114, for review of a particular administrative action, such as the granting of a well permit or an adjudication order, so long as they could show that they were "aggrieved or adversely affected" by the agency action or inaction. Under such circumstances, the plaintiffs could challenge the processes used by the State in making its decision and/or the legal and factual basis for the decision. There is no showing in this case that the plaintiffs have challenged the permits affecting their properties through the available administrative channels.

13. Section 41–3–911 states in relevant part:

(a) Whenever a well withdrawing water for beneficial purposes shall interfere unreasonably with an adequate well developed solely for domestic or stock uses as defined in W.S. 41–3–907, whether in a control area or not, the state engineer may, on complaint of the operator of the stock or domestic well, order the interfering appropriator to cease or reduce withdrawals of underground water ...

(b) Any appropriator of either surface or underground water may file a written complaint alleging interference with his water right by a junior right. Complaints are to be filed with the state engineer and are to be accompanied by a fee of one hundred dollars ($100.00) to help defray costs of investigation. This section is not applicable to interference between two (2) surface water rights. Upon receiving the complaint and fee, the state engineer shall undertake an investigation to determine if the alleged interference does exist. Following the investigation, the state engineer shall issue a report to all interested parties stating his findings. The report may suggest various means of stopping, rectifying or ameliorating the interference or damage caused thereby.

(c) Any interested appropriator who is dissatisfied with the results of the foregoing procedure may proceed under the applicable provisions of the Wyoming Administrative Procedure Act [§§ 16–3–101 through 16–3–115]. If a hearing is to be held, it shall be held before the appropriate water division superintendent. The superintendent shall report to the board of control at its next meeting. The board shall issue its order to include findings of fact and conclusions of law.

[¶ 42]   Likewise, West's and Turner's request for an order directing the State to adopt new or revised rules and regulations is not appropriate for declaratory judgment. Wyoming statutes specifically give the State authority to adopt rules and regulations for the administration of water, *see, e.g.,* Wyo. Stat. Ann. §§ 41–4–211, 41–3–909 and 41–3–308 (LexisNexis 2007).   The State has adopted rules pertaining to groundwater and reservoirs, although they are not specific to CBM water.   *See,* Rules of State Engineer's Office, Chap. 1 (Introduction to Wyoming Water Administration); Chap. 4 § 2 (Adjudication of Proofs, Groundwater Proofs) (2005); Rules of State Engineer's Office, Surface Water, Chap. 5 (Reservoirs) (1980); Rules of State Engineer's Office, Ground Water Rules (1974).

■■■  [¶ 43]   Any interested person may petition an agency for promulgation, amendment or repeal of a rule under § 16–3–106. We recognized the importance of the petition process in *Goedert v. State ex rel., Wyo. Worker's Safety and Comp. Div.,* 991 P.2d 1225, 1228 (Wyo.1999).   West and Turner should have requested rule making before seeking a declaratory judgment ordering the State to undertake that function.[14]   This is especially true because, under the procedure set forth in § 16–3–106, a petitioner "may accompany his petition with relevant data, views and arguments" to help the agency determine if the petitioned action is appropriate.   We conclude, therefore, that West's and Turner's fourth cause of action does not present a justiciable controversy.

[¶ 44]   The plaintiffs stress that this case presents a matter of great public importance and, consequently, the elements of a justiciable controversy should be ignored or relaxed. As conceded by the State, the administration of water is unquestionably a matter of great importance in Wyoming's arid environment.

Over a century ago, this Court stated: "It is doubtful if any questions of graver importance than those affecting water rights are presented for judicial consideration."   *Farm Inv. Co. v. Carpenter,* 9 Wyo. 110, 61 P. 258, 259 (Wyo.1900).

[¶ 45]   *Jolley v. State Loan and Inv. Bd.,* 2002 WY 7, ¶ 9, 38 P.3d 1073, 1077 (Wyo. 2002) involved a petition for review of agency action under § 16–3–114(a); nevertheless, we examined the public interest element of our justiciable controversy jurisprudence.   *See also, Riedel v. Anderson,* 2003 WY 70, ¶ 22, 70 P.3d 223, 230 (Wyo.2003).

We have recognized a more expansive or relaxed definition of standing when a matter of great public interest or importance is at stake.   *Washakie County School District Number One,* 606 P.2d 310, 317 [ (Wyo.1980) ]....   Historically, we have applied the great public interest and importance doctrine to find standing where we ordinarily would not in the following instances: *Washakie County School District Number One,* 606 P.2d 310 (constitutionality of school financing); *Memorial Hospital of Laramie County* [*v. Dept. of Rev. and Taxation*] 770 P.2d 223 [ (Wyo. 1989) ] (tax exempt status of hospital); *State ex rel. Wyoming Association of Consulting Engineers and Land Surveyors v. Sullivan,* 798 P.2d 826 (Wyo.1990) (constitutionality of the Wyoming Professional Review Panel Act);  *Board of County Commissioners of the County of Laramie v. Laramie County School District Number One,* 884 P.2d 946 (Wyo.1994) (entitlement of school district to interest on school district funds held by county treasurer); and *Management Council of the Wyoming Legislature* [*v. Geringer*] 953 P.2d 839 [ (Wyo.1998) ] (constitutional scope of governor's veto power).

. . . .

---

**14.**   We do not suggest, at this juncture, that the plaintiffs would be entitled to a ruling directing the agencies to adopt rules even if they had exhausted their administrative remedies.   A determination of whether an agency is required to adopt regulations depends on the agency's statutory authority and responsibility to adopt regulations.   *See, e.g., Jergeson v. Board of Trustees of School Dist. No. 7, Sheridan County,* 476 P.2d

481, 483–84 (Wyo.1970) (stating that agencies directed by the legislature to adopt rules should do so); *Rissler and McMurry v. Environmental Quality Council,* 856 P.2d 450 (Wyo.1993) (ordering EQC to adopt rules because statute directed agency to do so); *Kearney Lake, Land and Reservoir Co. v. Lake DeSmet Reservoir Co.,* 487 P.2d 324 (Wyo.1971) (ordering Board of Control to adopt rules).

[W]e have historically applied the doctrine when a constitutional question is presented—as in *Washakie School District Number One; Wyoming Association of Consulting Engineers and Land Surveyors; and Management Council*—or where the issue concerns the apportionment of state revenues among governmental entities—as in *Memorial Hospital and Board of County Commissioners of the County of Laramie* .... The doctrine of great public interest or importance should be applied cautiously:

> The question of great public importance rests with this court, *Kellner v. District Court In and For City and County of Denver*, 127 Colo. 320, 256 P.2d 887, 888 [ (Colo.1953) ]. This exception must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance.

*Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo.1974).

*Jolley*, ¶ 9, 38 P.3d at 1077–78 (some citations omitted).

[¶ 46] Although we have said that the requirements for a justiciable controversy may be relaxed or avoided in matters of great public interest or importance, we have also stated that "wanting any of [the *Brimmer*] requisites, a great public interest alone is insufficient to warrant the action of the court under any situation which we might at present foresee." Cranston, 530 P.2d at 729. A close reading of the cases applying the public interest exception indicates that we have not detoured from Cranston. The plaintiffs in cases involving a matter of great public importance have also alleged a tangible interest that would receive some practical benefit from a judicial decision. For example, in *Brimmer*, incumbent state senators stated that they planned to file as gubernatorial candidates in the upcoming election. Consequently, a decision about the legality of running for the governor's office while still holding the office of state senator would have a practical effect on them. In *Washakie County*, the plaintiffs included parents, children, and school board members whose interests were directly affected by inequality in public school funding, and, in *Memorial Hospital*, the public hospital's finances would be directly affected by a decision on whether it owed sales tax on construction purchases. In *Director of State Lands & Investments v. Merbanco, Inc.*, 2003 WY 73, 70 P.3d 241 (Wyo.2003), school children, their parents and the Wyoming Education Association were found to have standing to challenge the constitutionality of exchanges of school trust lands without competitive bid, a matter of great public importance; however, a corporation that was only a prospective bidder did not. While this Court has recognized a more lenient definition of justiciability in matters of great public importance, the facts alleged in these cases demonstrate that public importance alone is not sufficient to establish justiciability.

[¶ 47] The Uniform Declaratory Judgments Act envisions a true justiciable controversy before the court may decide a matter, even if the case presents a matter of great public importance. The act does not extend the jurisdiction of the court and § 1–37–103 specifically requires that an "interested" person present an appropriate "right" for declaration before the court can assume jurisdiction. If we were to rule that any matter of great public importance could be litigated under the Declaratory Judgments Act, we would be impermissibly extending our jurisdiction beyond that allowed under the act and the concept of justiciability firmly established in our jurisprudence.

By ruling that the Court does not have jurisdiction over this case, we do not want to leave the impression that we approve of the State's administration of CBM water. West and Turner raise serious allegations of damages to their property from CBM water and failures on the part of the State to properly regulate CBM water statewide. The plaintiffs' failure to connect any particular state action to their harm prevents them from establishing justiciability here. Nevertheless, in the event we are presented with a true justiciable controversy in another case, we will not hesitate to determine whether the State's processes meet the constitutional and statutory directives.

### 2. *Right to Intervene*

[¶ 49] In Case No. S–08–0162, Pennaco and Devon challenge the district court's conditional order allowing intervention only in the event it did not grant the State's motion to dismiss. They claim that, as long as they satisfy the requirements for intervention as a matter of right, they should be entitled to participate in all proceedings. In general, we have no quarrel with their position. However, we need not delve into their question because we are affirming the district court's dismissal of the complaint and there will be no further proceedings in which the intervenors may participate.

## CONCLUSION

[¶ 50] The plaintiffs' claims are simply too general to be justiciable. They do not connect the alleged deficiencies in the State's administration of water to a direct harm they have suffered. Nor do they make a sufficient showing that a ruling by the court will have an actual effect on them.

[¶ 51] Moreover, administrative remedies are available to the plaintiffs to address many of their complaints. Where administrative procedures are provided, plaintiffs must utilize those procedures before bringing a declaratory judgment action.

[¶ 52] Affirmed.